IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 18-cv-00194-RBJ-NRN

CALVIN JOHNSON,

       Plaintiff,
v.

JANE DOE and
SERGEANT "AUCOIN,'

       Defendants.

---

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on defendant's motion for summary judgment. ECF No. 122.

## I. FACTS

Plaintiff Calvin Johnson is an inmate at Sterling Correctional Facility ("SCF") in Sterling, CO. ECF No. 6 at 2. On December 26, 2017 plaintiff was in his cell while corrections officers were collecting inmates' dinner trays. ECF 122-7, at 2. When officers attempted to collect plaintiff's dinner tray, plaintiff attempted to assault prison staff "with an unknown liquid through [plaintiff's] cell tray door." ECF 122-2 at 2. Following this attempted assault, a force cell team ("team") was assembled to remove plaintiff from his cell and search him. *Id*. Defendant Sergeant Aucoin was assigned to this team as the ISPRA device handler. *Id.*

Upon approaching plaintiff's housing block, the team realized that plaintiff had covered his cell's windows so that no one could see inside. *Id.* at 3. The team gave plaintiff "multiple verbal commands to uncover his window," and plaintiff ignored those commands. *Id.*

Following plaintiff's non-compliance with the team's orders, Officer Rafferty opened plaintiff's tray slot. *Id.* Once the tray slot was open, plaintiff threw "a brown combined liquid/solid substance" through the tray slot that struck defendant in the head, face, upper body, both arms, both legs, and boots. *Id.* In response to plaintiff's throwing the brown substance at prison staff, defendant deployed oleoresin capsicum spray ("pepper spray") using the ISPRA device "through Mr. Johnson's tray slot for approximately three seconds." *Id.*

Although plaintiff uncovered his cell window after the pepper spray was deployed, plaintiff continued to disobey direct orders. *Id.* The team repeatedly ordered plaintiff "to submit to a strip search and to allow Colorado Department of Corrections ("CDOC") staff to place him in wrist restraints through the cell door tray slot." The team leader confirmed through plaintiff's cell window that plaintiff was not complying with these orders. *Id.* Plaintiff claims that the initial spray caused him to lose consciousness. ECF No. 123 at 2. However, plaintiff has cited to no materials in the record nor has he provided this Court with any evidence that supports this claim. In fact, on December 26, 2017 plaintiff denied having any injuries as a result of the pepper spray and did not require medical attention. ECF No. 122-14 at 1.

When plaintiff continued to disobey the team's orders, defendant again deployed pepper spray through the tray slot for approximately three seconds. ECF No. 122-2 at 4. In defendant's affidavit, he explains why he deployed the spray a second time: "… [plaintiff] continued to disobey orders to submit to a search, previously attempted to assault staff prior to activation of the Force Cell team, and assaulted the Force Cell team… with fecal matter once the team had arrived at his cell door." ECF No. 122-2 at 4. Following the second deployment of pepper spray, the team was able to enter plaintiff's cell. ECF No. 122-2 at 4. Plaintiff was immediately placed in restraints and transferred to a decontamination shower where he was able to shower for

approximately eight minutes. ECF No. 122-7 at 6. Following the decontamination shower, nursing staff performed an anatomical exam. Plaintiff reported no physical injuries and required no medical attention. ECF No. 122-14.

## II. PROCEDURAL BACKGROUND

On January 25, 2018 Plaintiff filed this case pro se against several parties, many of whom were SCF corrections officers. ECF No. 1 at 1. On April 6, 2018 the Hon. Lewis T. Babcock dismissed most of these claims. ECF No. 14. The relevant remaining claim is an Eighth Amendment excessive force case asserted against Sgt. Aucoin. Plaintiff alleges that on December 26, 2017 defendant sprayed his cell with pepper spray twice while he was inside. ECF No. 6, at 6. Plaintiff further alleges that defendant's use of pepper spray constituted unconstitutional excessive force because the cell's "small closed-in environment" exacerbated the pepper spray's side effects. *Id.*

Defendant filed a motion requesting that this Court grant summary judgment on three grounds: (1) plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), (2) plaintiff failed to meet the standard required to proceed with an excessive force claim, and (3) defendant is entitled to qualified immunity as a CDOC Lieutenant. ECF No. 122.

## III. STANDARDS OF REVIEW

A. **Summary Judgment**

A court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The

nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.  A fact is material "if under the substantive law it is essential to the proper disposition of the claim."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  The court will examine the factual record and make reasonable inferences in the light most favorable to the party opposing summary judgment.  *See Concrete Works of Colo., Inc. v. City and Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### B. **Pro Se Litigation**

When hearing claims brought by pro se litigants, courts should liberally construe allegations in their pleadings and consider their claims together rather than as isolated paragraphs. *Trackwell v. U.S. Gov't,* 472 F.3d 1242, 1243 (10th Cir. 2007).  Although pro se pleadings should be liberally construed, a pro se plaintiff is not "relieve[d]… of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (internal quotation marks and citations omitted).  Furthermore, while pro se litigants will not be held to the same standards as licensed attorneys, it is improper for the judge to serve as the unrepresented litigant's advocate.  *Hall,* 935 F.2d at 1110.

## IV. ANALYSIS

### A. <u>Failure to Exhaust Administrative Remedies</u>

The PLRA prohibits prisoners from filing Section 1983 actions regarding prison conditions until they have exhausted all available administrative remedies. 42 U.S.C.S. § 1997e(a). Specifically, the exhaustion provision states that "[n]o action shall be brought with respect to prison conditions… by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available have been exhausted." *Id.* "Exhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Although the PLRA requires exhaustion, it also "gives district courts the power to dismiss some claims on their merits even when administrative remedies have not been exhausted." *Steele v. Fed. Bureau of Prisons*, 355 F. 3d 1204, 1208 (10th Cir. 2003), *overruled on other grounds by Jones v. Bock,* 549 U.S. 199 (2008). Accordingly, a plaintiff's failure to exhaust administrative remedies does not divest the court of subject matter jurisdiction. *Id.*

Under the PLRA, "exhaustion … means using all steps that the agency holds out, and doing so *properly*." *Rinaldi v. U.S.*, 904 F.3d 257 (10th Cir. 2018) (quoting *Woodford*, 548 U.S. at 81). Merely beginning the grievance process is insufficient for exhaustion purposes. *Thomas v. Parker,* 609 F.3d 1114 (10th Cir. 2010). Determining whether a plaintiff has properly exhausted administrative remedies requires courts to determine whether the plaintiff completed "the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. at 218 (2007) (citation and internal quotation marks omitted).

The burden is on defendant to assert failure to exhaust as a defense, and defendant does so here pursuant to Fed. R. Civ. P. 56. Once the defense has been raised, the plaintiff must show either that he exhausted all administrative requirements or that the grievance process was unavailable to him. *Tuckel v. Grover,* 660 F.3d 1249, 1254 (10th Cir. 2011). Thus, the claim must be dismissed if the evidence presented does not create a genuine issue of material fact as to whether Mr. Johnson exhausted his constitutional claim against defendant. *See Fields v. Okla. State Penitentiary,* 511 F.3d 1109, 1113 (10th Cir. 2007).

1. CDOC's Grievance Policy

CDOC Administrative Regulation 850-04 governs SCF's prisoner grievance policy. *See* ECF No. 122-3. The regulation outlines a three-step grievance process. *Id.* To properly exhaust administrative remedies, inmates must complete all three steps. *Id.* A final agency determination is issued after a grievance officer investigates an offender's step 3 grievance. Exhaustion cannot occur until an offender receives the grievance officer's final agency determination. ECF No. 122-1 at 2.

In addition to the above-outlined grievance policies, the CDOC has policies in place to regulate inmates who file multiple frivolous grievances within a short time period. ECF No. 122-1 at 4. Under this policy, offenders who file frivolous grievances may forfeit their grievance privileges and be placed on grievance restriction. ECF No. 122-3 at 8. When on grievance restriction, an offender is permitted to file one grievance per month for a specified time period. *Id.* An offender placed on their second grievance restriction may only file one grievance per calendar month for a 180-day period. *Id.*

### 2. Plaintiff's Non-Compliance with CDOC's Grievance Policy

In plaintiff's initial complaint, he argues that he did not exhaust administrative remedies because he was on grievance restriction, and the process was therefore unavailable to him. ECF No. 8 at 5. Plaintiff was placed on a 180-day grievance restriction that expired on March 5, 2018. ECF No. 122-1 at 3. Notwithstanding this grievance restriction, between December 26, 2017, the date of the incident at issue, and March 5, 2018, plaintiff filed six separate grievances. ECF No. 122-4 at 4-11. None of these mentioned the December 26, 2017 incident involving defendant. *Id.* Plaintiff's argument that the grievance system was unavailable to him is unsupported by the record as he filed numerous grievances within the restriction period.

Based on the evidence presented by defendant, plaintiff not only failed to exhaust administrative remedies, he failed to even begin the grievance process. Plaintiff never commenced a step one grievance related to the December 26, 2017 incident. *See* ECF 122-4. Plaintiff has presented no evidence regarding his failure to exhaust administrative remedies nor has he presented any credible evidence that the grievance process was unavailable to him. For these reasons, defendant's motion for summary judgment is GRANTED as there is no genuine dispute of material fact as to whether plaintiff exhausted administrative remedies as defined by the CDOC grievance policy.

### B. Excessive Force Under the Eighth Amendment

As mentioned in Part IV.A of this order, a plaintiff's failure to exhaust administrative remedies does not deprive the court of subject matter jurisdiction. In the interest of finality and notwithstanding plaintiff's failure to exhaust, I will decide whether there is a genuine dispute of material fact requiring a trial as to plaintiff's Eighth Amendment claim.

The Eighth Amendment's cruel and unusual punishment clause prohibits prison officials from using excessive force against inmates. *Whitley v. Albers,* 475 U.S. 312, 327 (1986). Although plaintiff cites to the deliberate indifference standard in his complaint, it is well settled that courts should use the excessive force rubric "whenever prison officials make and carry out decisions involving the use of force to restore order in the face of a prison disturbance." *Redmond v. Crowther,* 882 F.3d 927, 936 (10th Cir. 2018) (quoting *Whitley,* 475 U.S. at 320 (1986)). Because pepper spray "is an instrument with which prison officers wield their authority," an Eighth Amendment excessive force analysis is more appropriate in this context than an analysis under the deliberate indifference standard. *Despain v. Uphoff,* 264 F.3d 965, 978 (10th Cir. 2001).

The primary question under the excessive force analysis is whether the officer "acted in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Redmond,* 882 F.3d at 936 (quoting *Whitley*, 475 U.S. at 320-21). Eighth Amendment excessive force claims have both an objective and subjective component. *Giron v. Corr. Corp. of America,* 191 F.3d 1281, 1289 (10th Cir. 1999). The objective component asks whether the "alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003). The subjective component considers whether the defendant acted with a sufficiently culpable state of mind. *Giron*, 191 F.3d at 1289 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick,* 481 F.2d 1028, 1033 (1973). The court's analysis must consider the highly charged prison environment. *See Sampley v. Ruettgers*, 704 F.2d 491, 496 (10th Cir. 1983).

1. <u>The Objective Component</u>

The objective component of an Eighth Amendment excessive force claim requires the court to determine whether the officer's use of force was reasonable by contextualizing the incident and being "responsive to contemporary standards of decency." *Smith,* 339 F.3d at 1212 (quoting *Hudson,* 503 U.S. at 22). Central to the court's inquiry is whether "force was applied in a good faith effort to maintain or restore discipline" or whether the force applied was excessive under the circumstances. *Redmond*, 882 F.3d at 936 (quoting *Whitley*, 475 U.S. at 320-21). To assess whether the force was reasonable the court must "balance the need for application of force with the amount of forced used." *Mitchell v. Maynard*, 80 F.3d 1433, 1440 (10th Cir. 1996).

To determine whether Sgt. Aucoin's use of pepper spray was objectively reasonable, this Court must balance his need to use force with the amount of force he used. In his deposition, plaintiff admits to both throwing fecal matter at officers through the cell door's tray slot and not complying with their orders. ECF 122-5 at 34. He also admits his plan to further attack officers if they attempted to enter his cell. He states, "[b]ut, see, my plan was if they cracked my door to run in, I'd daze them with a shit bomb and then I may get a few licks in before they finally get me. But they ended up doing the gas thing, so I had to change my plan." *Id.* Plaintiff put the team's health and safety at risk when he assaulted them with fecal matter. Therefore, plaintiff's noncompliance with direct orders coupled with his assaultive conduct toward defendant and other prison guards made defendant's need to use force high.

Defendant used force to respond to plaintiff's assaultive behavior and to prevent plaintiff from putting prison staff at further risk. Therefore, force was used for the legitimate penological purpose of restoring order and preventing plaintiff from further attacking prison staff with fecal matter. The amount of force used—spraying plaintiff with pepper spray twice for no more than

three seconds—was commensurate with the defendant's considerable need to use force to restore order. Relying on the *Whitley* court's language, defendant's use of force was employed "as a good faith effort to restore discipline" and was reasonable given the highly charged prison environment and plaintiff's recent assault against officers.

For the above reasons, no genuine dispute exists under the objective component of the excessive force standard as to whether Sgt. Aucoin acted as a reasonable officer would under the circumstances.

### 2. The Subjective Component

Under the subjective component of an excessive force analysis, a court considers whether the defendant "had a sufficiently culpable state of mind" when using force. *Giron,* F.3d at 1289. An officer's state of mind is sufficiently culpable when he acts "…maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Redmond,* 882 F.3d at 936 (quoting *Whitley*, 475 U.S. at 320-21). An officer's actions are malicious or sadistic "only where no legitimate penological purpose can be inferred from the conduct." *Giron,* 191 F.3d at 1290.

The parties contest the facts relevant to the subjective component of the excessive use of force claim. While the summary judgment standard requires this Court to view the evidence in the light most favorable to plaintiff, because we are beyond the pleadings stage, this Court will only accept "versions of the facts if a reasonable juror could believe [them]." *Redmond,* 882 F.3d at 935 (internal quotation marks and citations omitted). Plaintiff claims that after defendant deployed pepper spray the first time, he became unconscious thereby obviating the need for the second deployment of pepper spray. ECF No. 8 at 6-7. He further claims that because he was unconscious, the second deployment of spray was "malicious and sadistic," and that defendant

was attempting to murder him. *Id*. at 7. However, plaintiff does not present any evidence or cite to the record to support his version of the facts.

In fact, nothing in the record supports plaintiff's claims that defendant acted maliciously and sadistically or that plaintiff was unconscious when defendant deployed the spray for a second time. The video of the alleged incident shows plaintiff responsive and able to get into the decontamination shower just moments after the pepper spray was deployed. ECF No. 122-12. Additionally, after the decontamination shower, plaintiff was examined by nursing staff where plaintiff denied having any injuries and did not require medical attention. ECF No. 122-14 at 1. Based on the record, no reasonable jury could find that plaintiff was unconscious at the time defendant deployed pepper spray into his cell.

While defendant deployed pepper spray twice, both instances lasted no more than three seconds as evidenced by video footage of the incident. ECF No. 122-12. In his affidavit, defendant explains that he deployed pepper spray twice because "Mr. Johnson's act of throwing fecal matter at me posed a serious threat to my health and safety and to the other corrections officers in the Force Cell team. This act, combined with Mr. Johnson's non-responsiveness to commands and his prior attempt to assault staff, necessitated the two uses of OC Spray to ensure that he would not continue to pose a threat." ECF No. 122-2 at 4. Based on the evidence, defendant did not use force for the sole purpose of harming plaintiff, but rather to protect both himself and prison staff from further assault. Based on these facts, no reasonable jury could find that defendant acted maliciously or sadistically for the very purpose of harming plaintiff or that deploying spray for three seconds was an attempt to murder plaintiff.

For the above reasons, no genuine dispute exists as to whether Sgt. Aucoin used force sadistically or maliciously for the sole purpose of harming Mr. Johnson. Because plaintiff has

not demonstrated the existence of a genuine issue of material fact concerning Sgt. Aucoin's use of force, he has not shown that there is a triable issue concerning the alleged Eighth Amendment violation. Accordingly, defendant's summary judgment motion is GRANTED.

Furthermore, because plaintiff has failed to demonstrate a constitutional violation, this Court need not address defendant's qualified immunity defense.

**Order:**

1. The motion for summary judgment filed by defendant Aucoin, ECF No. 122 is GRANTED.

2. The Court enters its final written judgment dismissing this civil action with prejudice. As the prevailing party, defendant is awarded reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1, to be taxed by the Clerk following the submission of a bill of costs pursuant to the rule.

DATED this 24th day of August, 2020.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge